The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. You may be seated. Good morning, Mr. Candidate. Are you ready? Your Honors, and may it please the Court, good morning. Good morning. Mr. Bell's, well, the government's motion to dismiss the appeal in the case first should be denied, and Mr. Bell's sentence at the statutory maximum of 20 years should be reversed. I can address those in either order, but to begin with the motion to dismiss the government file. There are really four arguments I think we're making in this case. By way of background, Mr. Bell was originally sentenced to this term of 300 months. He filed 2255 based on Davis. The government did not oppose that, and there was a plenary resentencing, and this is an appeal from that resentencing just in 2023. And the question really is whether the terms of the plea agreement, which purported to waive appeal, apply at this stage where the resentencing was a remedy for a 2255 that was granted. And the first argument is that the terms of this, properly and strictly construed against the government, both as drafter and in order to protect the constitutional and statutory rights of Mr. Bell, do not cover a sentencing appeal at this stage. The second is that even if the terms did cover it, were unambiguous and clearly covered it, that it is not enforceable due to a lack of consideration in the plea agreement. Next, I think, and I'm going a little bit out of order from what the briefs are, but I think lack of consideration comes before frustration of purpose. So even if the court determines that there was some sort of purpose or some consideration in this plea agreement, the principle of frustration of purpose is one that the government has frequently invoked in order to be able to be relieved. Are you seeking to put aside the entire plea agreement? No, Your Honor. Our position is we're within the plea agreement still. There hasn't been any violation of any of the promises that were made within the plea agreement. An argument that the plea agreement lacks consideration or that its purpose would be frustrated seemed to undermine the entire agreement, wouldn't it? I think if we were asking to exercise some right that we had waived in the plea agreement, then we'd need rescission to be able to do that, I think. So if the court determines that this plea waiver covers this situation and applies to waivers of appeal of resentencings, then yes, I think it would be rescission of the plea agreement because it's unenforceable due to any lack of consideration. And I can delve a little more into the consideration issues. And I put out in a chart in the briefing, but this plea agreement, Mr. Bell, of course, gave up a lot of rights. He gave up the right to go to trial, the right to have a jury, even the right under the Fifth Amendment to have a grand jury pass and have an indictment. He pled guilty to an information. He waived appeal, at very least of the direct appeal of the sentence that was to be imposed on that plea. And in exchange, the government's promises were to file or to request the third point for acceptance of responsibility, which they had no discretion to deny because Mr. Bell had pled before a trial date was even set and had not litigated any issues and freely admitted his guilt in the statement of facts. And aside from which the Sentencing Commission in Section 3E1.1 has expressly forbidden the government, and this court even before that in 2011 had forbidden the government from extracting an appellate waiver in exchange for recommending the third point for acceptance of responsibility. So that can't be consideration. There was an immunity provision, and that's the only other substantive promise the government made in the plea agreement that's filed, that promises immunity for any crimes or conduct specifically described in the statement of facts, which ordinarily would be some sort of consideration. But there is a gaping hole in exception that says except for crimes of violence under 18 U.S.C. 16, which the only thing the statement of facts describes is a crime of violence. Two substantive Hobbs Act robberies, the conspiracy no longer is, but he already pled to those, and the 924C counts. What about felon in possession? So it does not, so the, it says conduct specifically described. So it describes that Mr. Bell provided a revolver, I think, to the co-defendant. Possessed it. It says provided. I'm not sure exactly what the circumstances of the provision were. It would have to be the actual or constructive if he provided, wouldn't it? It's possible. It's possible to provide a gun to somebody simply by telling them where it is. It's likely, I would think. Go ahead. And I think the facts are what they are, and they're certainly described in the plea agreement, not the plea agreement, the PSR in more detail. But here the immunity provision only applies to conduct that is described in the statement of facts, and it describes the provision of a revolver to the co-defendant. Number one. Number two, it does not state or allege that the firearm had traveled in interstate commerce. It did not even allege, although we're not disputing, that Mr. Bell had a prior felony conviction or under rehafe that he knew that he had a felony conviction that would have disqualified him. And all of this is going to the lack of consideration? That's your argument? Yes. Okay. Go ahead. I don't see that the immunity provision would have precluded the government from filing a 922G. It certainly doesn't. It didn't at the time, and it doesn't preclude them from charging the additional 924C, which the government says was consideration, but there's no promise not to charge that, or a brandishing count which would have been a seven-year as opposed to a five-year 924C mandatory minimum. So the second one is that even if the court says there was some sort of consideration in the background here, the frustration of purpose doctrine is something that the government frequently invokes when it doesn't achieve the benefit that it was expecting. In the courts, and I've cited a few cases, at least in the district court, where the government's invoked that and been allowed to be relieved of its obligations under the plea agreement. And the frustrated purpose must have been so completely the basis for the contract that as both parties understand, without it, the transaction would make little sense. So in this case, back in 2012, the exposure would have been to stack 924Cs as the government notes. Our first position again, obviously, is they didn't promise not to charge that in the first place. There was an immunity provision that carved out a huge exception that would have let them charge that anyway. But the intervening event cannot be fairly regarded as within the risks the frustrated party assumed under the contract, and the non-occurrence of the event must have been a basic assumption on which the contract was made. And this is the case, as we cite in the briefs, of Bunner and the second restatement of contracts. In this case, the change in the law is really what happened. Between 924C stacking was abolished and made retroactive by Congress. Davis came in and made the conspiracy not to – precluded the conspiracy as a valid predicate for 924C. But after the intervening change in the law, there's still two counts that he remains convicted of, right? So the basis for the plea is he would be convicted of those in exchange for these promises from the government. Yes, sir. Well, to the extent there are promises, yes, there are, yes. That would be the consideration. That's still good, right? He's still guilty of those two counts, and the government's keeping its promises. Absolutely, Your Honor. Well, he certainly kept up his end. He's been convicted. We're not attacking or challenging the conspiracy counts. It was a 20-year statutory maximum on each count. The government, in fact, asked for part of that to be consecutive, so he's exposed to up to 40 years in this case. And we're not challenging or attempting to undermine or withdraw the plea for those counts to be pledged to. That's correct. I'm happy to address any more on that, but the specific performance issue is sort of the last argument. Just to make sure I'm clear, just take 10 seconds. What exactly is the frustration? The frustration is so when the subject of the contract, sort of the purpose for which the party entered into it, is gone. And in this case, again, assuming that now he had no need to have a plea agreement at all, what's the frustration? That's exactly the argument. So this is an alternative. That's what you're arguing, right? Yeah, this is an alternative argument. At this point, because how the world is now rectified, as you say, in your way, that if we started ab initio, he would just say, oh, I don't need a plea agreement. Is that right? I think that's more or less correct, Your Honor. Well, what about Judge Rushen just asking about those remaining findings of guilt that he still remains to be sentenced on? Isn't that still something that's important to him? Yes, Your Honor, but we're not challenging that. He's not trying to withdraw his plea. He's been convicted. He just wants to not withdraw it but to excise that part that says the waiver. Correct. If the court considers it to apply here and finds that there was some sort of consideration, then frustration would be the next step. Go ahead. I just want to understand because that's part of the case. Absolutely. Please interrupt, Your Honor. I'd rather clarify than just talk to you.  Go ahead, counsel. So specific performance is really, and this is sort of a broader picture question about what to do when somebody appeals if they are in violation of the promise not to appeal in a plea agreement. And ordinarily, in many cases, even in published cases, this court has just dismissed the appeal up front. In this case, though, we have an explicit list of negotiated remedies in case of a breach of the plea agreement. So the first point to make is this plea agreement purported to waive appeal of the sentence one. Have we ever taken that approach to a defendant appealing when they have an appeal waiver? Don't we normally just hold them to their promise and we reject the appeal, right? Is there any authority that you can cite for a case where we've considered filing a notice of appeal, a breach, and then we've consulted the remedies in a case of a breach section of the agreement? I am not aware of a case where that has been decided, but I'm also not aware of a case where it's even been argued, Your Honor, raised as a point. Well, it seems often those remedies are less favorable to the defendant, right? Often, yes, Your Honor. So it may just be the fact that a dismissal happens and then that's the end of the matter. This is kind of a special circumstance given the intervening 10 years that he spent in the Virginia Department of Corrections, the fact that he was stabbed and the government didn't oppose the 2255 here. This is, frankly, a pretty unique circumstance. But in any case, the plea agreement, one, we know that the waiver of appeal provision can't be enforced to the extent that it's written, because it purports to waive appeal on any grounds whatsoever for the length of the sentence and the manner in which the sentence was imposed. And this Court has, of course, held that that can't be enforced where, for example, the district court were to consider some race or commit some sort of egregious constitutional violation. Or there's a claim of ineffective assistance of counsel. The modern and the current plea agreements usually have that exception laid out. But this one doesn't. So we know it can't be enforced as written to the extent that it's written. So there are certain circumstances where a defendant, even with that. But you're not arguing any of those circumstances here, right? No. This is just a straightforward waiving. He waived the right to appeal any sentence on any ground, and now he's trying to appeal his sentence. Right? The re-sentence, yes. Right. On a remedy. Which is a sentence. It's the sentence he will be serving. It is the sentence he will be serving. Yes, absolutely, Your Honor. And I kind of skipped over the initial argument, which is just on the language of the plea agreement and the terms and the context. And I'm happy to focus on that at this point. The language of the plea agreement, the word sentence in this appellate waiver provision appears several times. There is the advice that the 3172, I believe, provides the right to appeal the sentence imposed. And then it says the defendant waives appeal of any sentence. And the government quotes that language. But it's the part that follows. It says any sentence within the statutory maximum, in parentheses, or the manner in which it was imposed. So any in that context. First of all, the sentence imposed seems to contemplate the sentence that's going to happen when I plead guilty here in this case. That's the next step of this case. Any sentence in the abstract could be ambiguous or could refer to any sentence at any time at any stage of any future proceedings. But with the full sentence being any sentence within the statutory maximum or the manner it's imposed, that reflects directly the arguments that are typically made on appeal in a sentence, that the sentence was procedurally or substantively unreasonable. Either too long or a mistake was made in the process. So it seems to properly construed in that context refer to a sentence of any length, not a sentence in any stage in the future. And even if this were a civil contract and there were some ambiguity here, the important background principles here are that it is construed against the government, not just as drafter, but because defendants are giving up fundamental constitutional rights. Because Mr. Bell, for example, in this case, is going to have to spend another 20 years beyond the 10 he already spent in Virginia DOC, in an environment where they can't protect him, he was stabbed. And in exchange for this appellate waiver. So the courts have been, this court, in fact, has been clear that it has to be completely unambiguous. It has to be obvious and clear from its meaning. And any sort of ambiguity or reasonable construction that benefits the defendant has to be given in these cases. So with that context, in addition, and I apologize, I'm out of time with seven seconds, but it doesn't include a 2255 waiver, which so many of these other cases that the government cites does. Thank you for your time. Thank you, counsel. Mr. Honnold. Good morning, your honors, and may it please the court. Daniel Honnold for the United States. This court should enforce the appeal waiver and dismiss this appeal. Because this appeal waiver is valid, and it covers the defendant's sentencing challenges from his post-2255 resentencing. I think I'll start my remarks this morning by just noting two things that are not on the table that this court commonly sees in these types of challenges. The defendant does not dispute that his plea and his knowledge of the appeal waiver itself were knowing and voluntary at the time that he entered into them. And he doesn't dispute that if the appeal waiver indeed applies to post-2255 resentencings, that the sentencing challenges he raises in his opening brief are squarely foreclosed and covered by this appeal waiver. So turning to what my friend is actually challenging here, our position is that it's quite clear that the appeal waiver in this case does cover all manner of sentencing, resentencings, whether it be in a post-2255 proceeding, a vacatur and remand for resentencing. For example, in the Roger Singletary context, or any other number of cases in which this court has continued to enforce the appeal waiver beyond the direct original sentencing. I'll start with the language. I think that's probably the best place to start. We're not operating on a blank slate here. This court has twice, to my knowledge, construed the clause any sentence within the appeal waiver that the government and defendants typically enter into. In Thornsberry, it described that as, quote, quite broad. And in Blick, it said, quote, the language of this waiver, which is any sentence, is exceedingly broad. So to the extent that my friend argues there's ambiguity in the phrase any sentence, that's been foreclosed by this court's case law in which it is unambiguously held that this language is in fact broad. And in the language here, JA-19, the phrase any is invoked twice, first to cover any sentence and then to cover a challenge on any ground whatsoever. The use of that expansive and broad language is meant to connote an appeal waiver that's going to cover the maximum amount of ground possible. I'd also note that this court has squarely confronted this issue in the post-2255 sentencing context. In Jones, in Parker, which we cite, in Jackson, which we did not cite but which is cited in the Boone case, 583 Federal Appendix 280, and by other courts in the Cooney case that we cite and in the Borden case in the Second Circuit that we cite. Courts uniformly hold that these types of appeal waivers apply to the post-2255 resentencing context. The reasons for that make a lot of sense in light of Haddon, which indicates, as Judge Rushing was referring to earlier, that the post-2255 sentence is the sentence that the defendant is serving. And there's no reason logically to distinguish it from the original sentence for purposes of the coverage of the appeal waiver. I'm not seeing any questions from the court at this juncture. I'm happy to address further the defendant's counterarguments with respect to consideration. Actually, there is something I would like to point out that has to date been unaddressed by my friend, which is the information, in addition to the charges that we forewent as part of the plea agreement, the information that we brought to the court's attention in Sealed Supplemental Appendix pages 32 to 38, which we reference on pages 9 and 10 of our reply in support of the motion to dismiss. This is not a closed proceeding, so I'm not going to go into detail unless the court asks me to, but we've provided that information to the court as additional consideration on top of the foregone charges, including the 922G1 that Judge Rushing mentioned earlier. I'll briefly touch on frustration of purpose. Given the opportunity here today, my friend has still not been able to say what purpose of his has been frustrated. I certainly can't imagine that it's been, that it would be that perhaps one day in the future, a decade after his original sentencing, one of his charges would be vacated by an intervening Supreme Court decision and he would be resentenced to a lower sentence and would be able to appeal from that. That's too speculative of a chain of events to have been a purpose that he had when he entered into this plea agreement, and that's all that we are asking this court to foreclose by enforcing this appeal waiver. Finally, specific performance is a contract remedy that applies when a party is in breach, and it's when the aggrieved party asks the court to order the breaching party to do something specific, like a sculptor being commissioned to make a sculpture, and the court orders that person to finish doing the work. We're not asking the defendant to do anything here, and we've not alleged that he's in breach of this contract in any way. So specific performance, the invocation of it, is simply a category error here. Those are all of the contract-based attempts to invalidate this entire plea agreement. None of them succeed, and the broad language of this appeal waiver unambiguously covers the particular procedural posture that we find ourselves in here today. And so we'd ask that the court enforce it and dismiss this appeal. Unless the court has any questions about the merits of the sentencing challenges that the defendant raises in the opening brief, which I'm prepared to address, I will yield the rest of my time. Thank you, Counsel. Thank you. Mr. Camden, you have some time reserved. Your Honors, first to address the information the government referred to in the sealed appendix 32 to 38. The document is not there. The government did not submit it. We don't have it. I don't have it. I didn't have it. Our office obviously did not represent Mr. Bell at that original proceeding in 2012. But there are things that the district court said that make clear that there was no promise from the government in that case. There was no representation that anything would be done. It was entirely within the sole discretion. And when there is a contract and the performance is in the sole and unreviewable discretion of the opposing party, that is not valid consideration, especially when there's no standard the court can apply. That was in the government submitted and made this argument, I think, in its reply to our response to the motion to dismiss. I'm happy to submit further cases on that if the court requires further briefing on that. But in any case, the specific performance issue is, I don't think, a category error because when this court dismisses an appeal, it is essentially, obviously there's a defendant who is appealing an appellant who wants to appeal, and the court's simply deeming them to have previously waived appeal under the terms of this plea agreement when the plea was entered. And when they didn't know what sentence they'd receive, they didn't know what, if any, grounds or whether the grounds of appeal would be. So that is, number one, a good reason to construe that waiver narrowly. But number two, it is a different situation than when a defendant- Aren't most plea agreements entered into before the defendant knows what she is going to be sentenced to? Yes, Your Honor. Okay. That's not a difference, is it? Well- Is it? It is for this district simply because- So I've spent my first seven years in the Southern District of California, and I've done a survey of all the districts, and this is obviously not in the record. But basically it comes down to about a third, a third, a third. I think the bare majority or plurality have an appellate waiver typically at the high end of the guidelines or a negotiated amount. A minority have these appellate waivers that they extract here, which is through the statutory maximum for any reason, for any purpose. It shows that the court is not bound by anything like that, so that's a plea that's already entered into, agreement already entered into, and it's accepted by the court. You still don't know what you're going to be sentenced to, right? That's correct, Your Honor. Okay. And that's part of the process. So I'm just- Again, I'm not going to open up the can of worms you've been arguing, but it's just hard to find the frustration or the, it looks like, contract of adhesion argument you're making either. But go ahead. And I wouldn't challenge- I don't say it's unenforceable ever. I just do think that that is a reason to construe it narrowly and not to extend it. Basically, you look at the plea agreement here and the appellate waiver, it just doesn't talk about 2255s at all. What happens if there is one? And this is just not contemplated. When a person enters a plea- Do you have any authority refusing to enforce an appellate waiver like this on these facts on a resentencing? Your government pointed to some cases enforcing these sorts of waivers. Are there any cases where courts have refused to enforce an appellate waiver on a resentencing like this? Not that I'm aware of, and not where a defendant wasn't making an argument that, for example, an egregious constitutional or due process violation. Not that I'm aware of, number one. But on the other hand, the cases where this court only has Jones, which is unpublished, and the government cites that as some sort of authority or precedent on the premise that we have the same facts, the same language, and we have an outcome, which was dismissal of the indictment. It was Jackson, I believe, too. And the government mentioned they didn't put that in their brief. Right. Another unpublished. I wrote down the site, Your Honor, and I'll certainly look that up. But in any case, Your Honor, number one, it's unpublished, and that's enough, I think, to say it's not binding. But number two, even unpublished decisions are only entitled to the weight that their reasoning employs. And when you have fact- Sure, but there's no- I'm just curious if I missed any case with persuasive reasoning going the other way. I want to make sure that we've considered everything that's out there. And I hadn't seen anything, but I didn't know if I missed something. I apologize, Your Honor, I have not been able to find anything. I have not-honestly, the arguments I'm making here are kind of just novel. I don't know that there's case law one way or the other on, for example, the consideration issue. And they're also very fact-specific. We have this particular language in this plea agreement, and there are lots of other plea agreements with different, more expansive waivers that cover at different stages or have different exceptions. Let me ask you about, because he did say Haddon. How does that, I mean, it seems as if that case is, you know, the appeal is the entire criminal case, a part of a criminal case. I'm just trying to understand your argument and how you reconcile that with Haddon. If I could, I understand I'm out of time. You can answer Judge Desmond's question. Thank you, Your Honor. So Haddon did reflect, well, Haddon also discussed- Because that was a 2255. It was, and it was a resentencing, I believe. But it reflected, it stated that really 2255 proceedings, I believe the term it uses, are hybrid proceedings. So it has some aspects of civil cases in the habeas context and also some aspects of the criminal case because the remedy for the civil case is essentially something that happens under the criminal law and is appealed under the statute governing appeals of criminal sentences. But that does not essentially transform the plea agreement language we have, which just doesn't talk about, mention, discuss, or provide any remedies for coverage for 2255 proceedings. It's entered in contemplation of the typical process, which is you enter a plea agreement, you plead guilty, you're sentenced, and then you go off and serve your sentence. It didn't anticipate this other thing. So the government is asking for the cover, to extend the cover of these things, and the government is perfectly capable of writing plea agreements that do extend through 2255 proceedings. They do frequently in many of the cases that they cite. So if there are no further questions, I'm assuming. Thank you for that. Thank you. Mr. Camden, I know you're not court-appointed. I know you're part of the Federal Public Defender's Office, but thank you for the assignment the court gave you, and I appreciate you. Thank you, Your Honor. I also recognize Mr. Arnold's representation of the United States. We'll come to our brief counsel and proceed to our next case.
judges: Roger L. Gregory, Allison J. Rushing, DeAndrea Gist Benjamin